# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

DBG PROPERTIES, LLC, a New Mexico limited liability company,

        Plaintiff,

v.

PRESERVE PINE CREEK VILLAGE, LLC, a Colorado limited liability company;
PINE CREEK VILLAGE ASSOCIATION, INC., a Colorado non-profit corporation;
STEVE PARRISH; OMAR WYMAN; EDDIE LAWRENCE; BROOKE DOBBINS;
JACK KRAYNIAK; and JOHN DOES 1-10,

        Defendants.

## COMPLAINT

COMES NOW, Plaintiff DBG Properties, LLC ("DBG Properties"), by and through its attorneys Holland & Hart LLP, for its Complaint, states and alleges as follows:

## INTRODUCTION

This case concerns the misuse of the judicial system by a homeowners' association (Pine Creek Village) and a group of neighbors (the Individual Defendants), hiding behind a single-purpose LLC (Preserve Pine Creek), which was formed and now operates for the sole purpose of opposing DBG Properties' development of an affordable housing project in the City of Colorado Springs ("Royal Pines" or the "Project").[1]

In a transparent effort to stop (or at least delay) the Project, these Defendants have initiated two wild lawsuits in this Court, and have attempted to remove one of their lawsuits to federal court—without anywhere close to a legitimate basis for federal subject matter jurisdiction. None of the Defendants' filings has stated a meritorious claim or legal theory. Indeed, the three judges who have considered these claims and theories have made short work of them. *See* Exs. A to C. But legal merit is not Defendants' point; their point is to stop the Project through *any* legal claim, however baseless, banking on the hope that the Project cannot go forward while litigation is pending.

Indeed, a recent fundraising letter from Pine Creek Village Board President—and Preserve Pine Creek member—Defendant Steve Parrish to "Fellow Pine Creek Village Homeowners," boasted that "existing legal fees […] have stopped this development for over 18 months." *See* Ex. D.

---

[1] Royal Pines is situated at 4150 and 4190 Royal Pines Drive on the west corner of the intersection of Union and Powers Boulevards in the City of Colorado Springs (the "City").

Similarly, a flyer circulated by Preserve Pine Creek on around Memorial Day 2025 acknowledged the group's true intentions: "This is our chance to stop this [Project] for good after being able to **_thankfully delay_** for 2 years" (emphasis added). *See* Ex. E. Notably, nowhere do these Project opponents state that they have a valid legal claim which should stop, or delay, the Project on the merits; that is because Defendants have no such valid claim, and they obviously know it.

Defendants' bad-faith litigation conduct has resulted in at least three varieties of harm: (i) frustrating the City's and State's goals of providing affordable housing to their citizens; (ii) clogging up judicial dockets with unmeritorious claims and filings; and (iii) causing significant financial harm to the developer, Plaintiff DBG Properties. This lawsuit seeks redress for the third and final category of harm only, but each presents an important public-policy interest.

To the extent the Defendants are successful in stopping the Project altogether, Defendants should be found jointly and severally liable for tens of millions of dollars, in an amount to be proven at trial, consisting of DBG Properties' sunk costs and future expectancy damages.[2] Additionally, Defendants have already caused DBG Properties substantial financial harm (by delaying the Project), which DBG Properties will seek to recover, whether or not Defendants succeed in their ultimate goal of stopping the Project.

**PARTIES**

1. Plaintiff DBG Properties is a New Mexico limited liability company, with a principal place of business located at 901 Park Avenue SW, Suite 901, Albuquerque, New Mexico, and authorized to do business in Colorado. Its members are exclusively non-Colorado residents.

2. Defendant Preserve Pine Creek Village, LLC ("Preserve Pine Creek") alleges to be a single-purpose limited liability company whose members own real property in the City of Colorado Springs, near the Project site.

3. Defendant Pine Creek Village Association, Inc. ("Pine Creek Village") is a Colorado non-profit corporation.

4. Upon information and belief, the following Defendants (all residents of Colorado Springs) are members of Preserve Pine Creek (collectively, the "Individual Defendants"):

   a. Steve Parrish;

   b. Omar Wyman;

---

[2] By way of example, DBG Properties stands to lose approximately $30,000,000.00 in credits—for development and construction costs—from the Colorado Housing and Finance Authority ("CHFA") if the Project is not placed in service by December 31, 2026. DBG Properties will seek to hold Defendants, and all of them, responsible for all such losses in the event they succeed in stopping the Project by advancing baseless legal claims.

      c. Eddie Lawrence;

      d. Brooke Dobbins; and

      e. Jack Krayniak.

5. Defendants John Does 1 – 10 are individuals, currently unknown to Plaintiff, who are also members of Preserve Pine Creek, and are included as "Individual Defendants" for the purposes of this Complaint.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states, the amount in controversy exceeds $75,000, and there is complete diversity between the parties.

7. This Court has personal jurisdiction over Defendants because they reside in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8. Venue is appropriate in this Court under 28 U.S.C. § 1391(b) and (c) because the events giving rise to this Complaint occurred in this district, and because the Defendants may be found in this District.

## PROCEDURAL BACKGROUND

### First Unsuccessful Civil Action

9. After the Colorado Springs City Council denied Preserve Pine Creek's appeal of the Planning Board's approval of the Project, Preserve Pine Creek filed its "C.R.C.P. 106(a)(4) Complaint for Judicial Review" in El Paso County District Court on March 21, 2024. See Case No. 2024CV30520 (the "Rule 106 Action").

10. On December 9, 2024, DBG Properties filed a Motion to Intervene in the Rule 106 Action, which motion was granted on December 10, 2024.

11. On December 31, 2024, Preserve Pine Creek filed a Notice of Removal to Federal Court in the Rule 106 Action, claiming federal subject matter jurisdiction based on a "federal question," which Preserve Pine Creek argued arose from a federal statutory *defense* it intended to raise. *See* 1:24-cv-03616-CNS-MDB (the "Federal Action"). *See* Ex. F (the Notice of Removal).

12. On January 10, 2025, DBG Properties filed a Motion to Remand in the Federal Action, because there was no potential basis for federal subject matter jurisdiction. The City of Colorado Springs (the "City") likewise filed a Motion to Remand on January 30, 2025.

13. On January 21, 2025, the El Paso District Court issued an order dismissing Preserve Pine Creek's 106 Action with prejudice. *See* Ex. A (the "106 Dismissal").

14. On February 14, 2025, DBG Properties voluntarily dismissed its Intervention Complaint with prejudice. *See* Ex. G.

15. Preserve Pine Creek did not appeal the 106 Dismissal and that judgment is final .

<u>Second Unsuccessful Civil Action</u>

16. On April 18, 2025, U.S. District Court Magistrate Judge Dominguez Braswell issued a recommendation "that the [Federal Case] be REMANDED to the El Paso County District Court" (the "Recommendation"). *See* Ex. B.

17. On May 2, 2025, Preserve Pine Creek filed an objection to the Recommendation (the "Objection"). *See* Ex. H.

18. On June 6, 2025, U.S. District Court Judge Sweeney overruled Preserve Pine Creek's objection and affirmed the Recommendation. *See* Ex. C.

<u>Third Civil Action</u>

19. On June 4, 2025, having lost the Rule 106 Action in Colorado State Court, and having lost the Federal Action in Colorado Federal District Court, Preserve Pine Creek filed a second action, which seeks, *inter alia*, an injunction prohibiting the City from (i) issuing private activity bonds in connection with the Project; and (ii) "consummating the agreement" between the City and DBG Properties. *See* Case No. 2025CV31997 (the "Bond Action"). *See* Ex. I.

20. On June 27, 2025, the City filed a Motion to Dismiss the Bond Action (Ex. J). On that same day, the City filed a Motion to Expedite Briefing and Resolution of the City's Motion to Dismiss, which that court "granted in part" on July 1, 2025, directing a close of briefing on the Motion to Dismiss on or before "noon on July 10, 2025."

21. The Rule 106 Action; the Federal Action; the Bond Action are collectively referred to as the "Preserve Pine Creek Lawsuits" or the "Lawsuits" in this Complaint.

### STATE AND MUNICIPAL EFFORTS TO PROMOTE AFFORDABLE HOUSING

22. In November 2022, Colorado voters passed Proposition 123, a ballot measure authorizing the state to retain 0.1% of state income tax annually to fund local affordable housing efforts, from development to land acquisition. The Proposition became effective upon the proclamation of Governor Jared Polis on December 27, 2022, and represents the largest dedicated fund for affordable housing in Colorado history.

23. The fund is split 60-40 between two state agencies that administer housing programs, with the bulk of the funds for development issued by the Colorado Housing and Finance Authority (CHFA) for land acquisition, equity investment and debt financing. *See* C.R.S. § 29-32-104.

24. On June 26, 2023, the City "opted in" for eligibility to Proposition 123 funds, becoming one of the first municipalities to do so. In return for eligibility to these funds, the City committed to providing its residents with 2,274 new affordable units by December 31, 2026 (758 units per year).

### DBG PROPERTIES AND THE PROJECT

25. DBG Properties is an affordable housing developer, which is family-run, and which has been doing affordable housing exclusively for approximately 30 years.

26. DBG Properties has built a portfolio of nearly 8,000 affordable-housing units in seven western states, including Colorado Springs' own Academy Heights, which opened in the summer of 2023 and is now fully leased with a waiting list.

27. DBG Properties has been under contract to purchase the Royal Pines since February 13, 2023, with the intention of developing an affordable housing apartment complex containing 232 units.

28. Royal Pines will consist of three four-story buildings—with a total of 232 units—and a single-story clubhouse.

29. The Project will provide 100% affordable housing, targeting income levels at the 30, 60, and 70 percent of the Area Median Income level.

30. To DBG Properties' knowledge, the Project is currently the largest proposed affordable housing development aimed at addressing the City's affordable-housing goals

31. The Project received, after extensive public hearings, approval by both the Colorado Springs Planning Board and the Colorado Springs City Council.

### PROJECT FINANCING

32. DBG Properties is reliant on a combination of public and private financing to develop the Project.

33. To that end, DBG has secured a SB22-159 Loan of up to $2,500,000 from the State Housing Board, which loan offer will expire on July 31, 2025.

34. DBG has also secured a HDG Cash Flow Loan of up to $4,500,000.00 from the State Housing Board, which loan offer will also expire on July 31, 2025.

35. On May 27, 2025, the City Council awarded DBG Properties private activity bonds, in an "aggregate principal amount not to exceed $60,000,000, which amount will include not to exceed $40,000,000 of tax-exempt bonds and $20,000,000 of taxable bonds (the "Bonds")," for the purpose of financing the Project.

36. The above-referenced approval of the Bonds was issued in accordance with City of Colorado Springs and State of Colorado legal requirements applicable to the Bonds.

37. DBG has also engaged with a private lender, which has agreed to finance the Bonds (which do not constitute a debt obligation, in whole or in part, of the City), through a separate agreement, subject to the City's closing on the issuance of the Bonds.

38. On May 28, 2025, the Mayor approved the Bonds, and the closing date was set for July 15, 2025.

39. However, on June 5, 2025, Defendants initiated the Bond Action, and the City has now declined to close on the Bonds, based on the advice of its bond counsel, until and unless the Bond Action is resolved.

40. The loan agreements—and the Bonds—are collectively referred to as the "Project Financing."

### ALTER EGO ALLEGATIONS

41. Preserve Pine Creek is not operated as a distinct business and has no legitimate business purpose, apart from engaging in the Preserve Pine Creek Lawsuits.

42. Preserve Pine Creek does not own any real property, much less any real property in El Paso County.

43. As noted in Preserve Pine Creek's own communications, the Preserve Pine Creek Lawsuits were filed for the purpose of delay.

44. Upon information and belief, Preserve Pine Creek was created—and continues to operate—solely to shield the Individual Defendants from liability for engaging in unmeritorious litigation, to wit, the Preserve Pine Creek Lawsuits.

45. Upon information and belief, Preserve Pine Creek is thinly capitalized.

46. Upon information and belief, Preserve Pine Creek is a mere shell.

47. Upon information and belief, Preserve Pine Creek does not maintain adequate corporate records.

48. Upon information and belief, Preserve Pine Creek's form and ownership facilitates misuse by one or more insiders.

49. Upon information and belief, Preserve Pine Creek disregards corporate formalities.

50. Preserve Pine Creek is used by its members to engage in bad-faith litigation, interposed solely to cause delay.

51. Giving recognition to the corporate shield of Preserve Pine Creek would result in an injustice. As such, the Individual Defendants should be held jointly and severally liable for the conduct of Preserve Pine Creek, as set forth herein.

## SHAM CLAIMS

52. Defendants have filed—and caused to be filed—claims that are devoid of any cognizable basis in law.

53. With respect to the Rule 106 Action, Preserve Pine Creek failed to address (let alone meet) the applicable legal standard for reversing municipal decisions, of whether "the City *abused its discretion*" (emphasis added). *See* Ex. A (the State Court's findings on the Rule 106 Action), at 12 ("Preserve Pine Creek does not raise any argument that the City Council exceeded its jurisdiction in this case").

54. With respect to its Notice of Removal in the Federal Action, Preserve Pine Creek advocated for federal subject matter jurisdiction based on a federal *defense* it intended to raise; but it is black-letter law, and common knowledge among lawyers and judges, that the *complaint* itself must raise a federal issue to qualify for removal. As such, the Magistrate Judge and U.S. District Court Judge remanded the Federal Action back to state court, in brief opinions that quickly disposed of Defendants' deficient legal theories. *See* Ex. B & C.

55. The Bond Action is similarly baseless. *See* Ex. J (Motion to Dismiss); and Ex. K (Rule 11 Letter). For instance, that action is premised on a Taxpayers Bill of Rights ("TABOR") violation; but the issuance of the Bonds does not constitute a "creation of any multiple-fiscal year direct or indirect district debt or other financial obligation" requiring voter approval under TABOR. And Preserve Pine Creek (the sole plaintiff in that case) is not a taxpayer with standing to enforce TABOR, in any case.[3]

---

[3] These project opponents did not, however, take the conventional and appropriate steps for opposing bond issuance, such as attending public hearings or participating in the public comments process. This furthers the conclusion that their oppositional strategy is not to raise *issues* or *concerns* that are legally justifiable; instead, their strategy is to engage in litigation for the sake of engaging in litigation, believing that a pending lawsuit is the best way to stop a project they oppose.

56. The Bond Action also bizarrely seeks an "accounting" from the City but does not claim any "debt" owed to Preserve Pine Creek that could even possibly provide grounds for an accounting.[4]

57. Defendants brought each of the Preserve Pine Creek Lawsuits primarily for an improper purpose.

58. As such, the Preserve Pine Creek Lawsuits constitute sham claims that are not immunized from liability under the First Amendment of the United States Constitution.

## FIRST CLAIM FOR RELIEF
### (Abuse of Process – Preserve Pine Creek and Individual Defendants)

59. DBG Properties incorporates the allegations contained in the above paragraphs herein by reference.

60. Preserve Pine Creek (itself and as alter ego for the Individual Defendants) sought removal proceedings based on DBG Properties' Intervention Complaint in the Rule 106 Action on December 31, 2024.

61. However, on January 21, 2025, this Court issued an order dismissing Preserve Pine Creek's 106 Action with prejudice. In turn, DBG Properties dismissed with prejudice its Intervention Complaint on February 14, 2025. DBG Properties' dismissal with prejudice mooted the issue of whether the Intervention Complaint should be removed to federal court or not.

62. Nonetheless, Preserve Pine Creek did not dismiss its Notice of Removal regarding this moot issue. On the contrary, Preserve Pine Creek filed an objection to the Magistrate Judge's Recommendation that the case be remanded on May 2, 2025—*approximately 2.5 months after* DBG Properties had dismissed its Intervention Complaint. *See* Ex. H.

63. By filing an objection to a ruling involving an entirely moot issue (whether a withdrawn claim involved a federal issue), Preserve Pine Creek had no legitimate legal purpose. Instead, Preserve Pine Creek sought to use the process for its coercive goal of pressuring the City not to issue multifamily revenue bonds for the Project.

64. To that end, on April 21, 2025, Steve Parrish[5] emailed City representatives to ask: "How can the city authorize the issuance of multifamily revenue bonds for the Royal Pines Apartments before resolution of the federal case? This seems premature and irresponsible." *See* Ex. L. Parrish's statement makes clear that Defendants' purpose of the removal proceedings was *not* to

---

[4] Further evincing the slip-shod nature of the Bond Action, Preserve Pine Creek has cut and paste verbatim a passage from a California trial-court decision without any attribution—as the City pointed out in its Motion to Dismiss (Ex. J), at 2, n. 2. *See Jahanbigloo v. Molayem*, 2023 LEXIS 9372, *12.

[5] A Preserve Pine Creek member and the President of the Pine Creek Village Board of Directors.

resolve federal subject matter jurisdiction (for a moot claim); rather, Defendants' purpose was to delay "resolution of the federal case," so as to pressure the City not to issue the Bonds.

65. Based on the foregoing, Preserve Pine Creek has and had an ulterior purpose in the use of judicial proceedings with respect to the Preserve Pine Creek Lawsuits, in particular with respect to its Objection to the Recommendation.

66. Preserve Pine Creek's Objection did not even address the relevant legal standards and raised no meaningful legal arguments to support removal (even if the issue had not been moot, which it was). *See* Ex. C.[6] This lack of attention to presenting a viable legal argument further evinces an ulterior motive for filing the Objection.

67. Preserve Pine Creek has engaged in willful actions in the use of process that are not proper in the regular conduct of a proceeding, in particular with respect to its Objection to the Recommendation and in the meritless filing of the Bond Action.

68. DBG Properties has been damaged as a result of this abuse of process in an amount to be calculated at trial.

69. Preserve Pine Creek and the Individual Defendants should be held jointly and severally liable for these damages.

## SECOND CLAIM FOR RELIEF
### (Malicious Prosecution – All Defendants)

70. DBG Properties incorporates the allegations contained in the above paragraphs herein by reference.

71. Preserve Pine Creek itself—and as an alter ego for the Individual Defendants—has filed and has continued unmeritorious claims and proceedings against DBG Properties and its interests.

72. Pine Creek Village has aided and abetted this malicious prosecution by forming a committee in support of the Lawsuits and by funding them. *See, e.g.*, Restatement (Second) of Torts § 674 ("One who *takes an active part* in the initiation, continuation or procurement of civil proceedings is subject to liability" for malicious prosecution) (emphasis added); *see also id.* at Comment a.

---

[6] Preserve Pine Creek's "objection is not sufficiently specific. PPCV did little, if anything, to address Magistrate Judge Dominguez Braswell's findings. . . The arguments that PPCV presents it is objections, however, are nothing more than a general objection" and "PPCV does not even address Magistrate Judge Dominguez Braswell's finding that jurisdiction cannot be conferred based on anticipated defenses or defenses actually raised." *See* Ex. C, Order of June 6, 2025.

73. As such, the Defendants, and each of them, contributed to bringing the Preserve Pine Creek Lawsuits.

74. Two of the Lawsuits—the Rule 106 Action and the Federal Action—have ended in favor of DBG Properties, as Plaintiff-Intervenor. (The third lawsuit, the Bond Action, is pending and subject now to a Motion to Dismiss, under an expedited briefing schedule, from the City.)

75. Defendants have acted without probable cause and primarily for a purpose other than that of securing the proper adjudication of the claims in which the proceedings are based.

76. DBG Properties has been damaged, in an amount to be proven at trial, as a result of Defendants' malicious prosecution.

77. Defendants should be held jointly and severally liable for the damages resulting from this cause of action.

### THIRD CLAIM FOR RELIEF
### (Tortious Interference – All Defendants)

78. DBG Properties incorporates the allegations contained in the above paragraphs herein by reference.

79. Defendants have intentionally induced third persons not to enter into and/or to continue a contractual relationship with DBG Properties, with respect to the Project Financing.

80. Defendants used improper means to do so, by initiating and continuing baseless legal claims and theories.

81. DBG Properties has been damaged as a result of Defendants' tortious interference.

WHEREFORE, Plaintiff prays that the Court enter an Order and Judgment as follows:

A. Awarding DBG Properties damages and losses against Defendants, jointly and severally, plus Colorado statutory interest of 8% and all costs and fees allowable by law;

B. Awarding DBG Properties exemplary damages against Defendants for their malicious conduct, and for any other basis allowable under law or equity; and

C. Awarding DBG Properties such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: July 7, 2025.

        Respectfully submitted,

        */s/ Patrick J. Bernal*
        Patrick J. Bernal
        HOLLAND & HART LLP
        1800 Broadway, Suite 300
        Boulder, CO 80302
        Phone: (303) 473-2700
        Email: pjbernal@hollandhart.com

        **ATTORNEY FOR PLAINTIFF**
        **DBG PROPERTIES, LLC**

35361955_v1