**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 25-cv-2092-WJM-MDB

DBG PROPERTIES, LLC,

      Plaintiff,

v.

PRESERVE PINE CREEK VILLAGE, LLC, and
JACK KRAYNIAK,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

---

      This is a civil rights case between a real estate developer and a homeowners' association. Plaintiff DBG Properties, LLC ("DBG"), the real estate developer, received permission and funding to build an affordable housing complex in Colorado Springs, Colorado. Before the development started, however, Defendant Preserve Pine Creek Village, LLC ("PPCV"), the homeowners' association, filed multiple state court lawsuits in an effort to stop or delay the development from going forward. But those litigation efforts failed—and failed badly.

      Now, the tables have turned: DBG sues PPCV on the theory that PPCV abused the legal system in bad faith to its financial detriment. PPCV moves to dismiss this action pursuant to Colorado's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, § 13-20-1101, C.R.S. (2025). (ECF No. 23.) Defendant Jack

Krayniak, a member of PPCV, moves to join[1] PPCV's anti-SLAPP motion and

separately moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion" or "Motions").

(ECF No. 36.)  The Motions are fully briefed.  (ECF Nos. 32, 35, 52, 53.)

For the following reasons, the Motions are granted in part and denied in part.

## I.    BACKGROUND

As mentioned, DBG is a developer seeking to build an affordable housing

complex in Colorado Springs.  (ECF No. 22 at 1.)  PPCV is a "single purpose"

homeowners' association comprised of "a group of property owners," including

Krayniak, "that owns property adjacent to" the scheduled development.  (ECF No. 23 at

2; ECF No. 22-1 at 2.)  In January 2024, the Colorado Springs Planning Commission

("the Commission" or "Colorado Springs") approved DBG's development plans.  (ECF

No. 22 at 4.)  PPCV appealed the Commission's decision to the Colorado Springs City

Council ("the City Council").  (ECF No. 22-1 at 2.)  The City Council denied the appeal.

(*Id*.)

In March 2024, PPCV filed a Rule 106(a)(4) action (the "Rule 106 action") in

state district court against Colorado Springs and the City Council, seeking to overturn

the appeal denial.  (*Id*.)  In December 2024, DBG successfully moved to intervene in the

Rule 106 action as an intervenor-defendant.  (*Id*.)  In its intervenor complaint, DBG

sought "a declaratory judgment that . . . it be permitted to go forward with the project—

---

[1] DBG originally named an additional individual member of PPCV, Eddie Lawrence, as a
defendant in this action.  DBG voluntarily dismissed Lawrence from this action in September
2025 (ECF Nos. 49, 50), so this Motion is actually brought only by Krayniak at this juncture.
And apart from an alleged violation of the undersigned's revised practice standards, the Court
does not understand DBG to oppose Krayniak joining PPCV's anti-SLAPP motion.  Accordingly,
that portion of the Motion (Krayniak's joinder request) is granted.  (ECF No. 36.)

and the City be permitted to issue bonds—while the Rule 106(a)(4) appeal was pending

in state court." (ECF No. 22-2 at 2 (footnote omitted).)

Shortly thereafter, PPCV removed DBG's declaratory judgment complaint[2] to this

federal District court (the "federal action"). (*Id.* at 3.) DBG and Colorado Springs moved

to remand the federal action to state court. (*Id.*) In January 2025, however, while the

remand motions were still pending, the state court dismissed the Rule 106 action with

prejudice. (ECF No. 22-1.) In doing so, the court observed that

> Preserve Pine Creek does not cite either section of the City
> Code in its briefs or how the submitted plans fail to meet the
> requirements of those Code sections or how the City abused
> its discretion with regard to those Code sections when the
> City approved the submitted plans.

(*Id.* at 5.)

The court added that PPCV's "remaining arguments deal with the weight to be

given evidence." (*Id.*) But, the court explained, the applicable standard of review

dictated that the weight of the evidence "is a matter for the City, not this Court, to

consider." (*Id.*) Given that deferential standard, the court dismissed PPCV's action with

prejudice and upheld the City Council's appeal denial because its decision was

undisputedly supported by record evidence. (*Id.* at 7.)

In February 2025, DBG voluntarily dismissed its declaratory judgment

complaint—*i.e.*, the basis of PPCV's removal efforts—with prejudice. (ECF No. 22 at 5.)

Despite the state court's dismissal order and DBG's voluntary dismissal, however,

PPCV did not move to dismiss the federal action. Instead, the federal action proceeded

---

[2] It appears that the removal proceeding pertained only to DBG's declaratory judgment claim, not the Rule 106(a)(4) action as a whole. (*See* ECF No. 22-2 at 5 n.4 (observing that "PPCV does not appear to be asking this Court to review its Rule 106(a)(4) appeal").)

on the merits and, in April 2025, United States Magistrate Judge Maritza Dominguez Braswell issued a Recommendation that the federal action be remanded to state court. (ECF No. 22-2.)  As grounds, she concluded that the court lacked subject matter jurisdiction because, despite PPCV's invocation of federal question jurisdiction, PPCV merely relied on its anticipated defense to DBG's state declaratory judgment claim.  (*Id.* at 5.)  Judge Dominguez Braswell explained that federal question jurisdiction cannot be established by a party's anticipated defense.  (*Id.* at 6.)  Based on this well-worn principle, she recommended that the federal action "be remanded to state court."  (*Id.*)

Undeterred, PPCV filed an Objection to Judge Dominguez Braswell's Recommendation.  (ECF No. 22-3.)  On June 6, 2025, United States District Judge Charlotte Sweeney concluded that PPCV's Objection was "not sufficiently specific to warrant de novo review."  (*Id.*)  Indeed, Judge Sweeney explained, "PPCV did little, if anything, to address Magistrate Judge Dominguez Braswell's findings."  (*Id.* at 4.)  Instead, Judge Sweeney continued,

> The arguments that PPCV presents in its objections . . . are nothing more than a general objection to her findings—rehashing arguments that § 13-51.5-104 is unconstitutional, and rehashing argument that § 13-51.5-104 violates the *Noer Pennington* doctrine.  ECF No. 41 at 5–9.  PPCV does not even address Magistrate Judge Dominguez Braswell's finding that jurisdiction cannot be conferred based on anticipated defenses or defenses actually raised.

(*Id.*)

Accordingly, Judge Sweeney overruled the Objection,[3] adopted the

---

[3] To the extent the Court refers to the prior lawsuits/actions/litigation in this case throughout this Order, the Court means the Rule 106 action, the federal action, and/or the bond action.

Recommendation, and remanded the federal action to state court.  (*Id.* at 6.)

PPCV then filed another state court action (the "bond action") against the City of
Colorado Springs on June 4, 2025—*i.e.*, two days before Judge Sweeney overruled its
Objection.  (ECF No. 22 at 5.)  In that suit, PPCV "assert[ed] four claims in connection
with a City of Colorado Springs municipal bond issuance under C.R.S. § 29-3-101 et
seq."  (ECF No. 22-4 at 1.)  In essence, PPCV claimed that the bonds issued by
Colorado Springs violated the Taxpayers' Bill of Rights Act ("TABOR").  (*See generally
id.*)  It also requested "an accounting" under the Colorado Open Records Act ("CORA").
(*Id.*)

On July 22, 2025—*i.e.*, only a month and a half after PPCV filed suit—the state
court dismissed PPCV's claims on several grounds in a three-page order.  (*Id.*)  First
and foremost, the court observed that, to have associational standing, an organization
like PPCV must show, among other things, that "its members would otherwise have
standing to sue in their own right."  (*Id.* (quoting *TABOR Foundation v. Colorado
Department of Health Care Policy and Financing*, 487 P.3d 1277, 1283 (Colo. App.
2020).)  But, the court explained, PPCV had not "identified any of its members, nor has
it argued that it is a taxpayer."  (*Id.* at 1.)  According to the court, PPCV supplied only
"conclusory" and "[im]plausible" statements on this point.  (*Id.* at 2.)  Consequently, the
court concluded that PPCV lacked standing.  (*Id.*)

The court went on to consider the merits of PPCV's claims.  It concluded that
PPCV would lose on that score, too, because "[i]n this case, there will be no 'district
debt,'" as is necessary to assert a TABOR claim.  (*Id.*)  Instead, the court reasoned,
"[t]he debt will only ever be owed by the private entity completing the development."

(*Id.*)  The court added that "[a]ny assertion by [PPCV] that the City may ultimately be liable for bond payments is conclusory, as [PPCV] has alleged neither any facts nor any law to support such argument."  (*Id.*)

The court made quick work of PPCV's counterarguments as well, noting that PPCV either did "not respond" to portions of Colorado Springs's arguments, asserted "conclusory" "generalized allegation[s]," or posited "several" constitutional arguments, "none of which have merit."  (*Id.* at 3–4.)

Finally, the court rejected PPCV's position that it was entitled to "an accounting"[4] because "the Colorado Open Records Act (CORA) automatically grants anyone's request for an accounting."  (*Id.* at 4.)  It explained that PPCV was not entitled to an "accounting" because PPCV's complaint "does not assert a claim under CORA."  (*Id.*) The court declared that "it is not sufficient to argue that an entire act authorizes an accounting remedy without citing any particular provision of the act."  (*Id.*)  For all these reasons, the court dismissed the bond action.[5]  (*Id.*)

---

[4] The state court's order does not specify what PPCV sought an accounting of.  And the Court does not have PPCV's complaint in that forum before it.  So the Court can only surmise that PPCV sought an accounting of Colorado Springs's records, as it was the only party to the bond action.

[5] It is unclear what the current status of the bond action is.  The state court did not specify whether its dismissal order was with or without prejudice.  Relatedly, PPCV says that it asked Colorado Springs to meet and confer regarding amendment of the complaint "to plead taxpayer status," among other things.  (ECF No. 23 at 3–4 n.1.)  PPCV also describes the TABOR action as being "currently before the El Paso County Court."  (*Id.* at 4.)  And in its Reply, PPCV says that it filed a "motion pursuant to Rule 60 of the Colorado Rules of Civil Procedure." (ECF No. 53 at 5.)

A "malicious prosecution action cannot be brought until the underlying action is concluded and the time for appeal of the underlying suit has passed."  *Holick v. Burkhart*, 2017 WL 67907, at *9 (D. Kan. Jan. 6, 2017).  Because the bond action does not appear to have reached a final disposition, for this reason alone the Court has great doubts about whether this action could sustain a malicious prosecution claim.  In any event, PPCV and Krayniak do not make this argument.  And more to the point, the Court dismisses the malicious prosecution

DBG now asserts three claims in this action against PPCV and Krayniak based
on this prior litigation: (1) abuse of process; (2) malicious prosecution; and (3) tortious
interference.  (ECF No. 22 at 12–14.)  PPCV and Krayniak move to dismiss[6] these
claims on the grounds that they are foreclosed by the *Noerr-Pennington* doctrine and
Colorado's anti-SLAPP statute.  (ECF Nos. 23, 36.)  Krayniak echoes these arguments
and separately asserts a Rule 12(b)(6) argument.  (*See generally* ECF No. 36.)

## II.    DISMISSAL STANDARDS

### A.    ANTI-SLAPP DISMISSAL STANDARD

As a threshold matter, the Court addresses—and summarily rejects—DBG's
argument that "Colorado's anti-SLAPP statute does not apply in federal court."  (ECF
No. 32 at 15.)  The undersigned has already held the direct opposite in a past case.
*Coomer v. Make Your Life Epic LLC*, 659 F.Supp.3d 1189, 1197–1198 (D. Colo. 2023).
DBG cites *Coomer* in its Responses but fails to acknowledge its direct applicability to
this issue.  (*Id.* at 3, 10.)  Regardless, the Court reiterates the conclusion it reached in
*Coomer*: Colorado's anti-SLAPP statute applies in federal court.

In 2019, Colorado enacted its anti-SLAPP statute in an effort to "discourage
strategic lawsuits against public participation."  *Avodah Farms v. O'Hara-Rusckowski*,
2025 WL 1676509, at *3 (D. Colo. June 13, 2025) (quoting *Coomer,* 659 F.Supp.3d at
1196).  The statute's purpose is to "encourage and safeguard the constitutional rights of

---

claim because DBG does not satisfy all its legal elements.  So the Court does not entertain this
issue any further.

[6] The Court must note that the background section of PPCV's Motion is woefully
unhelpful.  It does not clearly lay out the pertinent background of this case; instead, it focuses
mainly on relitigating only one of the three judicial proceedings underlying this case.  (ECF No.
23 at 1–4.)  But for DBG's background sections in its responses (and its complaint), the Court
would truly have no idea what this case was about.

persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Salazar v. Pub. Tr. Inst.*, 522 P.3d 242, 246 (Colo. App. 2022) (citation omitted); *see also Lind-Barnett v. Tender Care Veterinary Ctr., Inc.*, 580 P.3d 573, 575 (Colo. 2025) (explaining that the anti-SLAPP statute is designed "to safeguard . . . against those who attempt to use litigation to chill speech").  It provides a procedural mechanism, through a special motion to dismiss, whereby the district court can weed out weak cases that tend to chill speech.  § 13-20-1101(3)(a).

That procedural mechanism involves a two-step analysis.  First, the defendant must show that the plaintiff's claims fall within the ambit of the statute.  § 13-20-1101(3)(a).  The General Assembly has identified four acts that qualify for statutory protection:

> (I) Any written or oral statement or writing made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law;
>
> (II) Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other official proceeding authorized by law;
>
> (III) Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (IV) Any other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

§ 3-20-1101(2)(a).

If the defendant clears this first hurdle, the burden shifts to the plaintiff to show a "reasonable likelihood" of prevailing on their claims at trial. § 13-20-1101(3)(a). Demonstrating a "reasonable likelihood" of success is a "minimal burden." *Moreau v. U.S. Olympic & Paralympic Comm.*, 641 F.Supp.3d 1122, 1133 (D. Colo. 2022); *see also Nat'l Abortion Fedn v. Ctr. for Med. Progress*, 2018 WL 5879786, at *4 (N.D. Cal. Nov. 7, 2018), *aff'd*, 793 F. App'x 482 (9th Cir. 2019) (opining that the "required probability [of prevailing] need not be high" in the second step of the anti-SLAPP analysis) (cleaned up)).

"At step two, if the special motion mounts a legal challenge—*i.e.*, attacks the legal sufficiency of the plaintiff's allegations—then the trial court reviews the motion under the standards articulated in Rule 12(b)(6)." *Avodah Farms*, 2025 WL 1676509, at *3 (citing *Timmins v. Henderson*, 2023 WL 2466020, at *3 (D. Colo. Mar. 10, 2023)). "But if the motion raises a factual challenge (or in other words, challenges the accuracy of the factual allegations), then Rule 56 standards apply." *Id.* (citing *Moreau*, 641 F.Supp.3d at 1133). In this latter situation, courts must generally allow discovery to proceed before resolving a factual challenge to an anti-SLAPP motion. *Coomer*, 659 F.Supp.3d at 1203.

"If the plaintiff makes this showing [at step two], the case proceeds; if they do not, the case is dismissed." *Lind-Barnett*, 580 P.3d at 575.

## B.    RULE 12(b)(6) DISMISSAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all

well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (internal quotation marks omitted).  The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

### III.    ANALYSIS

PPCV and Krayniak contend that DBG's claims must be dismissed under Colorado's anti-SLAPP statute because they are based on constitutionally protected activity—namely, PPCV's "lawful, linear exhaustion of judicial remedies available under Rule, Statute, and Colorado's Constitution."  (ECF No. 23 at 9.)  Relatedly, they contend that PPCV's petitioning activities are immune under the *Noerr-Pennington* doctrine.  (*Id.* at 9; ECF No. 36 at 7.)  Finally, Krayniak contends that DBG does not state a claim under Rule 12(b)(6).  (ECF No. 36.)  Save one exception (explained below), the Court rejects all three contentions.

### A.    THE SHAM EXCEPTION TO PETITION IMMUNITY

At the outset, the Court observes that PPCV and Krayniak's Motions largely center around the notion that they are immune from liability for twice suing DBG in state court and removing one of those actions to federal court.  (*See generally* ECF Nos. 23, 36.)  Indeed, the vast majority of their anti-SLAPP arguments are just a repackaging of their refrain that the *Noerr-Pennington* doctrine immunizes them from liability for

initiating the prior lawsuits.  (*Id.*)  Given the centrality of the immunity question to the

Motions, the Court resolves that issue before addressing the anti-SLAPP and Rule

12(b)(6) arguments.

## 1.    APPLICABLE LAW

"The First Amendment protects 'the right of the people . . . to petition the

Government for a redress of grievances.'"  *CSMN Invs., LLC v. Cordillera Metro. Dist.*,

956 F.3d 1276, 1282 (10th Cir. 2020).  "The Supreme Court has 'recognized this right to

petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights,'

and . . . explained that the right is implied by '[t]he very idea of a government, republican

in form . . . .'"  *Id.* (quoting *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524–25 (2002)).

"Immunity flows from this right, protecting those who seek redress through the courts

from liability for petitioning activities."  *Id.*

This immunity principle originates from the antitrust context, where it is referred

to as the *Noerr-Pennington* doctrine.  *United Mine Workers of Am. v. Pennington*, 381

U.S. 657 (1965).  That doctrine teaches that defendants do not commit an antitrust

violation merely by trying to influence public officials—even if their ultimate goal in doing

so is to exclude competition.  *Id.* at 669.  Put another way, "the Sherman Act does not

prohibit . . . persons from associating . . . in an attempt to persuade the [government] to

take particular action with respect to a law that would produce a restraint or a

monopoly."  *BE & K*, 536 U.S. at 525; *see also Van Sant & Co. v. Town of Calhan*, 83

F.4th 1254 (10th Cir. 2023) ("Thus, the *Noerr-Pennington* doctrine 'exempts from

antitrust liability any legitimate use of the political process by private individuals, even if

their intent is to eliminate competition.'") (citation omitted).  This is because the Petition

Clause protects legitimate petitioning activities. *Id.* "In this Circuit, [*Noerr-Pennington*]

immunity extends beyond antitrust situations." *CSMN Invs., LLC*, 956 F.3d at 1283.

Outside the antitrust situation, however, courts refer to the immunity concept as

"Petition Immunity."[7] *Id.*

Importantly, the "broad immunity" guaranteed by the Petition Clause is not

absolute. *CSMN Invs., LLC*, 956 F.3d at 1283; *see also United States v. Ambort*, 405

F.3d 1109, 1117 (10th Cir. 2005) ("As we have acknowledged, 'the right to petition is not

an absolute protection from liability.'") (citation omitted). In order to ensure that litigants

do not "use the courts to harass enemies with impunity," the Supreme Court has crafted

an exception that "disallow[s] immunity for 'sham' petitioning . . . ." *CSMN Invs., LLC*,

956 F.3d at 1283. In deciding whether a lawsuit constitutes "sham petitioning," the court

must consider (1) "whether the petitioning has an objectively reasonable basis," and (2)

if not, "what is the subjective intent behind the petitioning?" *Id.* at 1283–84. That is, a

litigant's subjective intent in bringing a suit matters only if the suit had no objectively

reasonable basis in the first place. *Id.* Losing in the underlying lawsuits is instructive

but not determinative on whether the suits were objectively baseless. *Id.*

The Colorado Supreme Court has set forth a similar three-part test for

determining whether a judicial proceeding constitutes a sham. *Protect Our Mountain*

*Environment, Inc. v. Dist. Court*, 677 P.2d 1360 (Colo. 1984) ("*POME*"). "Courts must

first determine whether the suing party presented sufficient facts to permit the court to

---

[7] DBG says the *Noerr-Pennington* "doctrine only applies to immunize litigants from *antitrust* liability, and so has no application to this case." (ECF No. 52 at 6 (emphasis in original).) This is true in a technical sense, but DBG is correct to "assum[e] [PPCV] intends to claim immunity under the Petition Clause." (*Id.*) The difference between the names is mere semantics here.

reasonably conclude that the defendant's action was devoid of objectively reasonable factual support or, if so supported, was lacking a cognizable basis in law." *City of Aurora v. 1405 Hotel, LLC*, 371 P.3d 794 (2016) (citing *POME*, 677 P.2d at 1370).  "If the court finds that this showing has been made, it must determine whether the plaintiff presented sufficient facts to permit the court to reasonably conclude that the defendant brought its action primarily for harassment or some improper purpose." *Id.*  "Last, the plaintiff must show that the defendant's petitioning activity had the capacity to adversely affect a legal interest of the plaintiff." *Id.*

## 2.    OBJECTIVE BASELESSNESS

Applying these principles, the Court concludes that DBG has presented strong evidence demonstrating that PPCV and Krayniak are not entitled to Petition Immunity because the Rule 106 action and the bond action (but not the federal action) were sham proceedings.

The Court begins by analyzing the Rule 106 action.  There, the state court dismissed PPCV's action with prejudice after determining that the applicable legal standard—whether "any competent evidence" supported Colorado Springs's approval of DBG's affordable housing development plans—did not permit it to second-guess that decision because it was supported by competent record evidence.  (ECF No. 22-1 at 7.) In reaching this conclusion, the court observed that PPCV did "not cite" the applicable "section of the City Code in its briefs," nor explain "how the submitted plans fail to meet the requirements of those Code sections or how the City abused its discretion with regard to those Code sections when the City approved the submitted plans." (*Id.* at 5.) Instead, PPCV simply insisted that Colorado Springs should have credited its evidence

more than its opponents' evidence.

But that was not the operative standard in the Rule 106 action. Again, the only issue that mattered in that proceeding was whether the City's appeal denial was supported by competent evidence. In the Court's view, failing to cite—let alone apply— the applicable legal standard constitutes objective baselessness under the *CSMN Invs., LLC* and *POME* decisions. And nothing about the state court's analysis otherwise suggests that it considered PPCV's arguments in defense of its suit to have been time-worthy. *Cf. CSMN Invs., LLC*, 956 F.3d at 1288 (holding that the sham exception did not apply where "both the district and appellate courts submitted lengthy opinions containing in-depth analysis, treating Appellees' arguments as time-worthy though ultimately unpersuasive"). Hence, the Court deems the Rule 106 action as objectively baseless.

The Court next addresses DBG's claim that the federal action constitutes sham petitioning in and of itself. (ECF No. 32 at 6–7.) PPCV and Krayniak do not appear to dispute the proposition that the federal action can be analyzed as a standalone, objectively baseless petition to the judiciary. (*See generally* ECF Nos. 35, 53.) On the contrary, they argue that the federal action constitutes protected petitioning activity— implicitly *conceding* that the federal action is itself a standalone action conducive to an independent sham petitioning analysis. (*See* ECF No. 53 at 4 (arguing that the removal of the declaratory judgment action constitutes petitioning under Colorado's anti-SLAPP statute).)

Whether a removal proceeding, like the federal action, can constitute petitioning independent of the underlying state action appears to be an unanswered question in

this Circuit.  The parties do not cite to authority on this specific issue, and the Court has

not located any either.  The Court has, however, identified authority stating that "[a]

removed action is not separate from the state action; r*ather, it is a continuation of it*."

*Sawyer v. USAA Ins. Co.*, 839 F.Supp.2d 1189, 1223 (D. N. Mex. March 8, 2012)

(emphasis added).  In this way, a removal is somewhat similar to an appeal, in that it is

just another phase of the same action.  The Tenth Circuit has concluded that losing a

series of appeals stemming from the same underlying action is not tantamount to losing

multiple, independent suits.  *See CSMN Invs., LLC*, 956 F.3d at 1288 (concluding that

losing before a local board, the state district court, and the Colorado Court of Appeals

did not constitute "multiple suits . . . on the same issue" because "[e]ach of these

appeals originated from the same case").  Extending this logic, the Court concludes that

the federal action cannot be analyzed for objective baselessness independent of the

Rule 106 action.  As such, the Court does not base its Order on whether the federal

action is independently objectively baseless or brought for improper purposes.[8]

    This last point brings the Court to PPCV and Krayniak's related argument that

DBG cannot defeat Petition Immunity because it fails to show "a pattern of baseless,

repetitive claims."  (ECF No. 23 at 9.)  PPCV and Krayniak rely on the *CSMN Invs., LLC*

decision in support of this argument.  (*Id.*)  But that case does not help them.  In *CSMN*

---

[8] Were the Court to further analyze this issue, however, it would conclude that the
federal action here was objectively baseless.  Judge Dominguez Braswell recommended a
remand based on the basic principle that federal question jurisdiction cannot be predicated on
an asserted defense.  (ECF No. 22-2 at 6.)  In adopting the Recommendation, Judge Sweeney
noted that "PPCV did little, if anything, to address Magistrate Judge Dominguez Braswell's
findings."  (ECF No. 22-3 at 4.)  Perhaps worst of all, DBG had already voluntary dismissed the
basis of the removal proceedings by the time these two federal judges had ruled on PPCV's
filings.  Yet PPCV did not move to dismiss the federal action in the face of all this.  In the Court's
view, this strongly indicates objective baselessness and bad faith.

*Invs., LLC*, the Circuit adopted the two-part analysis outlined in *Prof'l Real Estate Inv'rs,*

*Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993), which does not require a

pattern showing.  *See CSMN Invs., LLC*, 956 F.3d at 1287 ("So, for these reasons, we

adopt *Professional Real Estate*'s sham-petitioning test for determining whether conduct

is a sham, such that it loses Petition Clause immunity.").  To the extent the Circuit

considered whether a pattern showing was necessary, it did so only to the limited extent

that it was rejecting the Appellant's "*alternative basis* for deeming Appellees' petitioning

a 'sham'" under the *California Motor* test, which *does* appear to permit the finding of

sham litigation where the plaintiff can show a slew of baseless proceedings.  *Id.* at 1288

(citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)) (emphasis

added).  Hence, the Court holds that a plaintiff need not show a pattern of baseless,

repetitive litigation to defeat Petition Immunity under the sham litigation exception.  The

Court does not read *CSMN Invs., LLC* as requiring otherwise.[9]

Even assuming a pattern of baseless, repetitive claims is necessary to defeat

Petition Immunity, however, the Court finds that DBG would satisfy that requirement as

well.  The objective baselessness of the bond action is even more apparent than the

Rule 106 action.  In the bond action, the state court dispensed with PPCV's claims after

initially concluding that PPCV did not have standing to assert them.  (ECF No. 22-4.)

PPCV did not have standing, the court explained, because it had not "identified any of

its members, nor . . . argued that it is a taxpayer," as is necessary to plead associational

standing.  (*Id.* at 2.)  The court described PPCV's standing arguments as "conclusory"

---

[9] Although not binding here, the Court observes that Colorado courts do not require a
pattern of baseless petitioning either.  *See 1405 Hotel, LLC*, 371 P.3d at 803 ("A repetitious
pattern of baseless litigation is not necessary for application of the sham exception.").

and "not plausible." (*Id.* at 2.)

In addition, the state court did not rest its dismissal decision on standing alone.[10] The court went on to conclude that PPCV's case failed on the merits as well. This was so, the court reasoned, because a TABOR claim requires the existence of some sort of "district debt"—and no district debt was created as a result of DBG's development grant. (*Id.*) The court described PPCV's arguments to the contrary as "conclusory," "generalized," "merit[less]," and unsupported by "any facts []or law." (*Id.* at 2–4.) (Notice a theme here?) On top of that, the court rejected out of hand PPCV's request for "an accounting" because PPCV had not even asserted a CORA claim in its complaint. (*Id.* at 4.) Perhaps most notably, the court reached all these conclusions in very little time: The court ruled on DBG's dismissal motion in *less than two months* after PPCV had filed the action and wasted *only three pages of paper* in doing so.

For all these reasons, the Court easily concludes that DBG has sufficiently pleaded that the Rule 106 action and the bond action were objectively baseless. To the extent a showing of a pattern of baseless litigation is necessary, DBG has made that showing here as well.

---

[10] The parties have not briefed this issue, but the Court's quick research seems to suggest that a loss for a lack of standing does not always constitute objective baselessness. *Compare HRH, LLC v. Teton County, Wyoming*, 2018 WL 8131667 at *3 (D. Wyo. Oct. 11, 2018) (concluding that plaintiff sufficiently pleaded objective baselessness where organization filed "three appeals including repeated findings of no standing"), *with City of Aurora v. 1405 Hotel*, LLC, 371 P.3d 794 (Colo. App. 2016) ("Finally, we note that the fact that the division ruled in *1405 Hotel I* that the Hotels lacked standing to bring their first, second, and fourth claims does not mean that the claims lacked a reasonable factual basis or a cognizable basis in law, especially where the division's analysis of the standing issue resulted in a published decision.").

Here, though, in the Court's view the state court's standing conclusion *does* show objective baselessness. PPCV did not even *identify* who its members were, so the state court had no way of meaningfully analyzing the associational standing issue.

### 3.    SUBJECTIVE INTENT AND ADVERSE LEGAL IMPACT

Having reached this threshold conclusion on objective baselessness, the Court next considers the "subjective intent" behind PPCV's filing of these actions and what impact those actions allegedly had.  *CSMN Invs., LLC*, 956 F.3d at 1283.  DBG argues that PPCV's "primary objective" in filing its "specious legal filings" was to "delay[] the Project."  (ECF No. 32 at 8.)  Citing the *Van Sant & Co.* decision, PPCV counters that its right to petition the judiciary "is absolute, regardless of motive."  (*See, e.g.*, ECF No. 23 at 9; ECF No. 53 at 5.)

PPCV is mistaken for at least three reasons.  First, nothing in *Van Sant & Co* supports the broad proposition that the right to petition is absolute.  Second, the Tenth Circuit has said the exact opposite for at least 25 years.  *See, e.g., Ambort*, 405 F.3d at 1117 ("As we have acknowledged, 'the right to petition is not an absolute protection from liability.'") (quoting *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 891 (10th Cir. 2000)).  And third, the *CSMN Invs., LLC* decision expressly *directs* courts to consider a petitioner's motive for bringing a suit, *so long as* the court first concludes that the suit was objectively baseless.  *Id*. at 1283.  The Court has done that here.

Turning to subjective intent, then, the Court concludes that DBG has presented ample evidence—even at this early stage of the case—that PPCV and Krayniak's subjective intent in litigating the state actions was to stop or delay the development from moving forward.  PPCV's communications with its members and counsel confirm that delay was very much on its mind.  In a letter to its members, PPCV stated: "The Board is considering donating up to $50,000 (from reserves) to help pay for the existing legal

fees *that have stopped the development for over 18 months*."  (ECF No. 22-5 at 2

(emphasis added).)  Moreover, in what appears to be a flyer circulated to its members,

PPCV wrote: "This is our chance to stop [the development] for good *after being able to*

*thankfully delay for 2 years*."  (ECF No. 22-6 at 2 (emphasis added).)  And in a

December 2024 e-mail detailing PPCV's litigation plans, PPCV's counsel advised

PPCV's members as to the status of the Rule 106 action, noting that "[t]he city will not

issue the Private Activity Bonds (PAB) until the Rule 106 Appeal concludes.  *All other*

*funding is contingent on issuance of the PABS*."  (ECF No. 32-2 at 3 (emphasis added).)

The e-mail then went on to list "key dates" DBG needed to meet to acquire the funding

necessary to complete the development.  (*Id.*)

　　　　Tellingly, PPCV and Krayniak fail to even attempt to explain why these

communications do not reflect poorly on their true motives for bringing the Rule 106

action and the bond action.  (*See generally* ECF Nos. 23, 35, 36, 53.)  They instead

repeat the same conclusory statement: that their petitioning was made in good faith.

(*Id.*)

　　　　Thus, the record already strongly supports DBG's theory that PPCV and

Krayniak initiated the state actions not with the intent of winning those cases on the

merits, but instead to ensure that the litigation would drag on long enough to prevent

DBG from meeting its "key" funding deadlines.  The Court holds that the Petition Clause

does not immunize conduct of this kind.  *See* Rule 11(b)(1) (providing that a legal filing

should not be "presented for any improper purpose, such as to . . . cause unnecessary

delay").

　　　　Lastly, there can be no reasonable doubt that this delay has caused DBG

financial hardship. *POME*, 677 P.2d at 1370. It submits a declaration stating that it "has lost a significant amount of money because of the" PPCV's litigation tactics.[11] (ECF No. 32 at 9.) And in its motion to amend its first amended complaint, DBG elaborates that it was "required to pay liquidated damages to the seller of the Project lot as a result of the Project not proceeding as scheduled, incurr[ed] significant legal fees to attempt to facilitate the closure of the Project following Defendants' interference, and incurr[ed] extraordinary land use penalties." (ECF No. 62 at 3–4.) DBG adds that it has "also suffered harm from the delay in the form of lost rents, increased construction costs, and other injuries." (*Id.* at 4.)

In sum, the Court concludes that DBG has sufficiently alleged that the sham exception applies in this case. Accordingly, PPCV and Krayniak are not immune under the Petition Clause for bringing the two state court actions.

## B.    APPLYING THE ANTI-SLAPP STATUTE

PPCV and Krayniak contend that their petitioning activities fall within the ambit of Colorado's anti-SLAPP statute and that DBG is not reasonably likely to prevail on its abuse of process, malicious prosecution, and tortious interference claims. (ECF Nos. 23, 36.) DBG does not dispute that the anti-SLAPP statute applies to PPCV's prior litigation activities but maintains that "the Motion should be denied under step two of the anti-SLAPP statute analysis"—*i.e.*, the reasonable likelihood prong. (ECF No. 32 at 9.) With the exception of its malicious prosecution claim, the Court concludes that DBG is

---

[11] The Court understands that, since the Motions were filed, DBG has been able to close on the development. (*See* ECF No. 62 at 4 (updating the Court that "the Project has closed").) As a result, DBG seeks to amend its first amended complaint to seek "narrower relief" based only on the delay, not the complete stoppage of the development project. (*Id.*)

reasonably likely to prevail on its claims.

### 1.    WHEN TO PERFORM THE ANTI-SLAPP ANALYSIS

Initially, the Court notes that DBG urges it to abstain from ruling on the anti-SLAPP issue at the dismissal stage because the Motions lodge factual challenges to the first amended complaint.  (*Id.*)  The Court agrees that at least a portion of the Motions pertain to the factual elements of DBG's claims.  As explained below, all three claims involve elements that probe PPCV's intent for bringing the prior actions.  "Intent is a factual determination, not a question of law."  *Primerica Life Ins. Co. v. Arnold*, 2023 WL 2631783, at *5 (D. Kan. Mar. 24, 2023).  And where a defendant challenges the factual sufficiency of a claim under the anti-SLAPP statute, courts must ordinarily let discovery proceed.  *Coomer*, 659 F.Supp.3d at 1203.

Nevertheless, the Court thinks this situation is an exception to that general rule because, as established above, DBG has already presented a large amount of evidence on the factual issue of PPCV's intent in bringing the state actions.  Moreover, as the Court will explain shortly, DBG's malicious prosecution claim must be dismissed solely because of a legal deficiency.  Thus, ruling on the anti-SLAPP motion at this juncture is prudent because it will obviate the need for the parties to conduct needless discovery or otherwise confer as to the malicious prosecution claim.  Importantly, DBG will not be prejudiced by the Court resolving the anti-SLAPP issue before discovery has run its course because, to the extent it loses at this juncture, it is only on a legal issue.  *See Hewitt v. Rice*, 119 P.3d 541, 544 (Colo. App. 2004) ("In the context of a malicious prosecution action, whether the underlying claim was resolved in favor of the party prosecuting the malicious prosecution claim is a question of law.").

Hence, the Court elects to perform the anti-SLAPP analysis now and consider the only contested issue here: whether DBG is reasonably likely to prevail on its claims.

## 2.    ABUSE OF PROCESS

PPCV and Krayniak contend that DBG is not reasonably likely to prevail on its abuse of process claim.  (ECF No. 23 at 11.)  To prevail on that claim, DBG must show "(1) an ulterior purpose in the use of judicial proceedings; (2) willful actions by a defendant in the use of process that are not proper in the regular conduct of a proceeding; and (3) damages."  *Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007) (citing *Trask v. Nozisko*, 134 P.3d 544, 553 (Colo. App. 2006)).

PPCV and Krayniak focus only on the first element, arguing that they had no "ulterior motive" in bringing the Rule 106 action and the bond action.  (*Id.*)  Moreover, PPCV and Krayniak continue, DBG "cannot meet that burden because, even though they have lost, each action herein was privileged, well founded, and brought under statute or rule for the primary aims intended, that being defeating the project by pressing and exhausting all administrative and judicial remedies available."  (*Id.* at 13.)

But the Court has already found that DBG's evidence suggests just the opposite: PPCV's written communications with its members and counsel indicate that their actual purpose for bringing the state actions was to cause protracted delay—not defeating the development with a legitimate judicial victory.  Moreover, the Court emphasizes that the reasonable likelihood inquiry is not an exacting standard.  *Moreau*, 641 F.Supp.3d at 1133.  For these reasons the Court rejects PPCV and Krayniak's argument that DBG is not reasonably likely to prevail on its abuse of process claim.

### 3.    MALICIOUS PROSECUTION

PPCV and Krayniak contend that DBG is not reasonably likely to prevail on its malicious prosecution claim.  (*Id.* at 11.)  To prevail on that claim, DBG must show: "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages."  *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004).

PPCV and Krayniak again challenge only the first element.  (*Id.* at 10.) According to them, neither state court action, nor the federal action, were "brought against" DBG.  (*Id.*)  As a result, PPCV and Krayniak posit, DBG cannot prevail on its malicious prosecution claim as a matter of law.  (*Id.*)

The Court agrees that DBG is not reasonably likely to prevail on its malicious prosecution claim because it was not a party in the underlying state court actions, at least in the context of a malicious prosecution claim.  The Rule 106 action originally involved only PPCV (plaintiff), Colorado Springs (defendant), and the City Council (defendant).  (ECF No. 22-1 at 1.)  True, DBG successfully intervened in that action and became an intervenor-defendant.  (ECF No. 22-1 at 1.)  So, looking at the caption of the Rule 106 action, DBG was clearly on the opposite side of the "v." from PPCV.  (*Id.*)

But DBG does not cite, and the Court has not found, any authority providing that an intervenor can assert a malicious prosecution claim.  (ECF No. 32 at 13–14.)  And to the extent such authority exists, the Court has located recent cases—albeit outside this federal jurisdiction—declining to permit non-original parties in an underlying action to later assert a malicious abuse of process claim.[12]  *See Council of Unit Owners of the*

---

[12] The elements of Maryland's malicious abuse of process claim appear to be substantially similar to the elements of Colorado's malicious prosecution claim.  *See Havilah*

*Millrace Condo. Inc. v. Guinot*, 2025 WL 3227722, at *8 (Md. Ct. Spec. App. Nov. 19, 2025) ("Here, the putative class members were not original parties to the underlying action; therefore, the HOAs cannot sue on behalf of them."); *see also One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 42 n.4 (1997) (collecting cases (albeit old cases) holding "that the malicious use of process plaintiff must have been an original party to the underlying action"). The Court finds this caselaw persuasive. Since DBG was not an original party to the Rule 106 action, the Court holds that, as a matter of law, it cannot prevail on its malicious prosecution claim predicated on that action.

Nor can DBG assert a malicious prosecution claim based on the federal action. As explained above, a removal proceeding does not constitute a lawsuit independent of the derivative state court proceedings. The removal was merely a continuation of that original state court proceeding. *Sawyer*, 839 F.Supp.2d at 1223. Hence, DBG cannot assert a malicious prosecution claim based on the federal action either.

Lastly, DBG's malicious prosecution claim cannot proceed based on the bond action any more than it can proceed based on the Rule 106 action. DBG was not a party in the bond action (original or otherwise); rather, that case involved only PPCV and Colorado Springs. (ECF No. 22-4.) Furthermore, unlike the Rule 106 action, DBG did not even intervene in the bond action. (*Id.*)

DBG resists this conclusion by arguing that the bond action (and the Rule 106

---

*Real Prop. Servs., LLC v. Early*, 216 Md. App. 613, 622 (2014) (requiring "(1) a prior civil proceeding [was] instituted by the defendant; (2) the proceeding [was] instituted without probable cause; (3) the prior civil proceeding [was] instituted . . . with malice; (4) the proceedings [were] terminated in favor of the plaintiff; and (5) the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action.").

action, for that matter) "undisputedly sought relief adverse to [its] property interests in the Project."  (ECF No. 32 at 13.)  DBG then points to the *Hewitt* decision, wherein the Colorado Supreme Court recognized a malicious prosecution claim based on the filing of a notice of *lis pendens*.  154 P.3d at 415.

But DBG does not allege that it filed a notice of *lis pendens* with respect to the development in any of the underlying state lawsuits.  So DBG's reliance on *Hewitt* is unavailing here.  Contrary to DBG's suggestion, merely having an interest in the outcome of a case cannot be alone sufficient to state a malicious prosecution claim. (*Id.*)  Were that the law, the first element of the malicious prosecution claim—requiring "that the defendant contributed to bringing a prior action *against the plaintiff*"—would be meaningless.  *Thompson*, 84 P.3d at 503 (emphasis added).

For these reasons, the Court concludes that DBG is not reasonably likely to prevail on its malicious prosecution claim.  Accordingly, that claim must be dismissed.

## 4.    TORTIOUS INTERFERENCE

PPCV and Krayniak also contend that DBG is not reasonably likely to prevail on its tortious interference claim.  (ECF No. 23 at 11.)  To prevail on that claim, DBG must show:

> (1) existence of a valid contract between plaintiff and a third party; (2) knowledge by the defendant of this contract, or knowledge of facts which should lead him to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract by the third party; (4) action by the defendant which induces a breach of the contract; and (5) damage to the plaintiff.

*Douglas v. Kinnebrew*, 2023 WL 12058987, at *6 (Colo. App. Nov. 30, 2023) (quoting *Comtrol, Inc. v. Mountain States Tel. & Tel. Co.*, 513 P.2d 1082, 1084 (Colo. 1973)).

PPCV and Krayniak again offer only one argument as to this claim: that their petitioning activities are immune. (*See* ECF No. 22 at 13–14 ("Just as with Abuse of Process, Plaintiff cannot show a likelihood of prevailing on its intentional interference claim because, as a matter of law, it cannot establish the protected acts were 'improper.' Where tort claims are based on lawful conduct or speech protected by the Constitution, such lawful conduct is insufficient as a matter of law to establish the required element of improper conduct.").) But the Court has repeatedly found otherwise throughout this Order. So the Court rejects PPCV and Krayniak's argument that DBG is not reasonably likely to prevail on its tortious interference claim.

In all, the Court grants in part and denies in part the anti-SLAPP Motion. (ECF No. 23.) DBG's abuse of process and tortious interference claims may proceed; its malicious prosecution claim may not.

### C.    RULE 12(b)(6)

Finally, "Krayniak aver[s] that Plaintiff's complaint fails to state a claim against them because (1) the subject act undertaken by PPCV were statutorily and Constitutionally protected, *supra*, (2), *infra*, Plaintiff has not, and cannot, adequately pled facts sufficient to pierce the corporate veil, and (3) Plaintiff's claims lack merit." (ECF No. 36 at 4.)

Although Krayniak's Motion purports to separately challenge the factual sufficiency of DBG's claims under the Rule 12(b)(6) standard, he fails to raise arguments the Court has not already addressed in its analysis of the Petition Immunity and anti-SLAPP issues. (*See generally id.*) The only unique argument he makes separate from PPCV's anti-SLAPP Motion is that DBG has not sufficiently pleaded alter

ego or piercing the corporate vail.  (*Id.* at 9.)

To pierce the corporate veil,[13] DBG must show that "(1) the corporate entity is an alter ego or mere instrumentality; (2) the corporate form was used to perpetrate a fraud or defeat a rightful claim; and (3) an equitable result would be achieved by disregarding the corporate form."  *Martin v. Freeman*, 272 P.3d 1182, 1184 (Colo. App. 2012).

Krayniak develops an argument only as to the second element, asserting that DBG cannot show that he allegedly used PPCV's corporate form to "perpetrate a fraud or defeat a rightful claim."  (*Id.* at 10.)  But the Court has already found that DBG strongly alleges that Krayniak, an active member in PPCV, used that "single purpose" corporation to bring two state court actions with the intent of stymying DBG's ability to start developing the affordable housing project.  (ECF No. 23 at 2.)  In the Court's view, these allegations are sufficient to show Krayniak used PPCV's corporate form to perpetrate a fraud.

Accordingly, the Court rejects Krayniak's challenge to DBG's alter ego theory of liability.

## IV.    CONCLUSION

For the foregoing reasons, the Motions are GRANTED IN PART AND DENIED IN PART.  (ECF Nos. 23, 36.)  More specifically,

1.    PPCV's Motion is GRANTED to the extent it seeks dismissal of DBG's

---

[13] The Court observes that DBG does not formally assert a veil piercing theory of liability in its first amended complaint.  (ECF No. 22.)  But PPCV and Krayniak clearly understand DBG to intend to make such an argument at trial, so the Court elects to assume the same.

Perhaps it would be prudent for DBG to formally add that claim and/or revamp its alter ego allegations in its motion for leave to file the second amended complaint if it intends to assert it.  (ECF No. 62.)

malicious prosecution claim.  It is DENIED in all other respects.  (ECF No. 23.)

2.    Krayniak's Motion is GRANTED to the extent he seeks to join PPCV's

anti-SLAPP Motion.  It is DENIED in all other respects.  (ECF No. 36.)

3.    The stay in this case is hereby LIFTED, consistent with the terms outlined

in Judge Dominguez Braswell's order of October 27, 2025.  (ECF No. 61.)


Dated this 28th day of January, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge